Good morning. May it please the court, my name is Brett Spain and I represent Allogic LLC in this appeal. I see as the court has noted I've reserved three minutes for rebuttal. The court obviously is going to be familiar with the facts of this case. I'm not going to go through that again. There's two issues, really two questions that I've asked the court to consider closely in deciding this appeal. The first one is because this is a declaratory judgment action, what is the actual dispute between the parties? I know the court is aware that we have claimed that the district court improperly reframed that question as a limited challenge to the validity of the renewal provision in the agreement and did so to avoid ruling on the actual dispute, the actual issue that was briefed by the parties, which is taking this agreement as a whole. Is it indefinite in duration? Because if it is, under Virginia law, it's clear that it's terminable at will. Second question we'd like the court to consider is how the Supreme Court of Virginia would answer that question, which we think is the proper analysis in a diversity case, but the district court declined to undertake that case. So let me start with rightness. I want to be as clear as I can. This case has never been about the validity of the renewal provision. It was brought because there was dispute over the present rights of the parties as to whether the contract could be terminated because its duration from all the provisions in the contract is indefinite. That's what was being argued here, and it was not an abstract dispute, and I found it very interesting that the case that preceded us is all about privacy. What is these statutes that are going into place about privacy? What has to be done to protect it? Because that's what led to this dispute. This agreement was entered into in 2018. It was a predecessor to that one. Why is it wrong for the district court to say at a minimum there's a seven-year term here and therefore it's not indefinite? And there are some renewal terms, but we don't even know if we're ever going to get there. Understood, Your Honor. Really, there's two issues when you're talking about this question is, is the duration indefinite? And if it is, then it's terminable at will upon giving reasonable notice. And what I understood the court to be saying is, well, under any circumstances, the parties agreed to seven years, so it's answering a question that really wasn't presented to it because it's a factual question. What would be the reasonable notice if it is, in fact, terminable at will? We intentionally did not include that in the complaint because it was a factual issue. But that's what the district court ruled on. It never ruled on the first primary question is, is it indefinite? It decided that it did not need to consider the — because your client was trying to get out of the contract before the end of the seven-year term. I'm not trying to get out of it. I'm trying to get a declaration that it was terminable at will upon giving reasonable notice. That's what we asked for. We wanted the court to declare that to be the case. We did not want and did not ask the court to say what is reasonable notice. Well, the district court was free to look at it in a different way, right, to analyze it differently. I don't think so. I think the issue presented is obviously set forth in the complaint and how it's described. And that was the issue that was asked is, is it terminable at will upon giving reasonable notice? And the court never addressed that first issue. And the reason why the court did it is it took the view that this renewal provision is contingent in that you don't know if it will actually get there, if it will be triggered. Could you just give us — we're dealing with Virginia law, right? Yes, sir. Could you give us what you believe is the best case from Virginia law, from Virginia courts, not just in general about whether a contract is terminable at will, but specifically when there is a situation like the one before us where we have a definite term for the contract followed by renewal terms, that during the period of the initial finite term, the contract can be found to be terminable at will? Do you have any case from Virginia that tracks that? And maybe the answer is no. But my answer is the same as I told the district court. I don't have a case that tracks that exact fact pattern, and I don't want to pretend that I did. The case that is the closest is McLean v. United States because that did involve a contract with renewal provisions. And the court there said it's the same situation. It's unilaterally one side who only has ability to exercise those renewals forever. And to your point, why is that not contingent? We don't know if that other party every time is going to exercise the renewal. It is still — every time if they exercise it one time, you don't know whether they're going to do it the next year. But that doesn't make it contingent because it's in the agreement. The ability to exercise that right is currently in the agreement, and, therefore, that's what you're looking at. What does this agreement say? Renewal doesn't turn on what either party wants to do. As I read it, the automatic renewal is if there are customers using the product or data. Understood, Your Honor. That's the way it's worded. But the practical effect is because the way this contract works, OutLogic gets its data from suppliers. It identifies and takes care of the privacy issues. It then packages it up and sells to customers like Advan who then can use that aggregated information to create specific products. But Advan controls whether OutLogic data is going to be used by its customers. And there's literally millions of data points that OutLogic sends to Advan on a daily basis. In order to trigger that renewal, all they have to do is use a single data point a single time at the renewal period, and we're into the next renewal period. It is completely within their control. And that's why we cited all those cases that hold that. It is not helpful unless it is an objective fact that is not controlled by one of the parties. That does not give it a definite direction. Is it your position that because of the nature of the renewal terms, your client has the right to terminate now, even before the end of the seven-year term? It has the right to terminate upon reasonable notice. Including before the end of the seven-year term? If we did that, Advan would say that was not reasonable, you breached the contract. What we're saying is do we have the right to do it? And the reason that we, it is an absolute question that we need to have answers. Then you're undermining the seven-year term, the fact that it's a seven-year term. And if we did that and it was not reasonable, then we could be sued for that. Remind me, when is this seven-year term up? It's in 2025, right? May 2025, Your Honor. May 2025. So we're talking about a year on the seven-year. Right. Correct. And, Your Honor, this is, again, like I said, it was very interesting that the case before us is all about privacy because that's what we're trying to do. OutLogic came up with its revised forms, presented it to its customers, because since 2018 when this agreement was entered into, privacy laws have changed dramatically. The European Union, which also is applicable here, has passed GDPR, which is a massive change. The states are coming up with their own privacy laws. The kind of discussions that just preceded this are going to be happening all over the country about what these two parties do. Is that going to be a violation? And we have to know that we are working with customers who are going to do what it takes to protect personal information. And so, in our view, Advan has demonstrated that it is not committed to that, and therefore we need to have, we need to know. Well, you're not arguing that they breached the contract. Not yet, no. No, this is. Well, you've reserved three minutes for rebuttal. Why don't we hear from counsel for the appellee, Attorney Reddy. Good morning, Your Honors. May it please the Court, my name is Anne Reddy, and I represent the appellee, Advan Research Corporation. With regard to privacy, just right off the top, Advan, this case isn't about privacy. Advan agreed to every requested change regarding privacy in this agreement. It was amended to account for those considerations. And Advan also has an interest in privacy and in not being, you know, not violating any kind of regulation or rule, including internationally. So that's not even in this case. What is in this case is that you have an agreement entered into in 2018. It's a license agreement. It is non-exclusive, so either side can continue to sell data and purchase data from any other data provider. You have two entries into the field, Exmo at the time and Advan. Both are interested in consistency and in continuing their business. Advan is selling data products where you have to have historical information as well as real-time information, so that you can do trends and forecasting, this type of thing. It takes about two years to even get to a place where you can make those, you know, the product would be valuable. Can I just kind of cut to the question that the district court decided here, which is it's not right because you have a seven-year fixed duration of the contract. We're coming up on it expiring, the initial seven-year period within a year. In your view, does the ripeness problem at least go away if they were to file this case exactly a year from now? Yeah, absolutely. And then can they file it because you're looking in a declaratory judgment at imminence, right? Well, I don't know. Can they file this in March because they know that everything is slow in district courts and you've got to get your papers filed. It takes a while to get a district court to get all the papers. In other words, we're getting pretty close to that anyway. How imminent is imminent in your view? I mean, this is, as they have said, it's a rapidly changing industry. Companies are purchased even by competitors just to get rid of them. Things could happen in a year for sure that could make this not occur, for sure. So if they refile in April of 2025, would you file as a defense that it's not ripe again? No, Your Honor. And then you may have all sorts of other reasons why you think it's perfectly legal under Virginia law, but at least the ripeness goes away in your view? Yes, Your Honor. As a problem? Yes. Just to proceed. So to cut to the chase, what they're saying is that what they call the indefiniteness of the renewal clause should invalidate the validity of the initial term of seven years, which no one has argued is anything other than completely unambiguous. No one has argued that the renewal term is unambiguous either. However, to take a renewal term, say that it has an indefiniteness, which I will talk about it does not have. It actually has conditions, and it's been defined, and the parties have expressed how they would like their agreement to end, and say that it can invalidate the initial term. There is no case law, there is no case that has been cited that stands for that proposition under any conceivable notion of the case. There are about six cases that have been presented, both in the district court and here. None of them have changed. The first five, which would be your town of Vinton, Stoneaga, Stutzman, those cases had no duration at all. And there wasn't a renewal term that was at play. The McLean case was not presented until the fourth renewal term. That was when it was challenged, the court in that case. And there was no provision for dealing with the escalating, like an escalation of circumstances that had changed in that case. Here we have a provision even in the agreement that says, look, we don't want to talk about fees. If there are changes in circumstances and we want to change the fee structure, we can do so. And it's happened before between the parties. So setting that aside, even in the McLean case, the court said, look, okay, we'll give you one renewal. And in that case, it was a general covenant of renewal. A general covenant of renewal meaning it says renews from year to year. Here you have a renewal provision that says this is conditioned upon a customer using the data. We check it every two years. Now, as a practical matter, if a customer of ADVAN is not using the data, ADVAN has no interest in wanting to continue this agreement either. So it doesn't want to cut off its customers who are using the data. The agreement was symbiotic, you know, originally as though as in we're new to the industry, we will agree to buy your data that our customers are using. It was agreed upon by the principles, and that exact term was agreed upon. So there is nothing indefinite. Now, if you look at what indefiniteness might be, if you look at the McLean case also holds, perpetuity is okay as long as it's, you know, unequivocal, as long as the parties have said, we want our agreement to go on in perpetuity. So that's obviously not the case here. However, anything less than perpetuity, as long as it's definitively expressed, is also okay. The parties have agreed to it. If the parties agree this is what we would like our agreement to terminate upon the occurrence thereof, that's enforceable. Now, we're only talking, you know, obviously on appeal to this court of the rightness of termination. So, you know, Judge Buchwald did not get to the renewal provision, and the initial provision, which all parties agree and logic has conceded, is not challenged. It wasn't challenged before the court. The term of the initial provision was not challenged. His argument is only that the legal effect of the renewal provision renders the initial provision invalid somehow, and there is absolutely no support in the case law for that termination. Was judgment entered in this case with or without prejudice? Was there any sort of notation about whether in any way the appellant would be precluded from refiling this case a year from now? I don't have the answer to that right off the top. I could look for it quickly. But I know that there's a note saying, you know, they could file this. Actually, a footnote in the decision by Judge Buchwald that says, you know, their concern that they will never have a right controversy is not valid because they could refile it as soon as the renewal provision were or, you know, was triggered. And you represented to us today, I think, that if they were to refile this a year from now, you would not argue that their claim is barred for lack of rightness. Correct, Your Honor. And that they would not be barred by virtue of this decision having been filed from then renewing the claim about the renewal term. No, Your Honor. Okay. I would not argue that. Should I continue or is there anything you don't seem to want to hear anymore from me? Up to you. I don't think we have any questions, but your call. I'll just quickly mention that the public policy, there's some public policy argument made. Public policy of enforcing an agreement as written, I think, overrides any of the completely off-base cases that are cited, which involve completely different concerns. And you outline that in the brief. And so if there's anything else from you, I'd like to. No. Thank you very much. Why don't we hear again from Attorney Spain. You have three minutes for rebuttal. Your Honor, there are just a few points that I'd like to address that counsel had argued. First, with respect to the privacy provisions. After this lawsuit was filed, there was, the parties did reach an agreement on some of those privacy issues, which we discussed in our briefing. But they've not agreed on the other things that we think are very necessary to continue in this space, particularly with respect to an assignment provision about who they can assign it to and what the assignee could do with the data that it gets from OutLogic, which is critical here. So that's the issue. We still haven't got that resolved. On the rightness, I found it very interesting. In the district court, the court has looked at the pre-motion filings that were made by the parties. Advance said that it was not right for the reason that the court eventually decided on. But it didn't put it as part of the motion for summary judgment because we had pointed out exactly what the problem with that is, is that you never get to a point where it actually becomes right. Well, I think you just heard a concession twice from your opponent that if you were to refile this a year from now, in May 2025, they will not raise a defense that it is unright. So I think you now have a concession from the other side that you did get to a point. And I've got a court order from the district court saying the same thing. The question is, are we allowed to have that determination now? Is the basis for which the court reached that? The point is that in answering no, that you're not, the reliance is on the fact that the district court has said you can challenge during the renewal period. I'm looking at 8218, footnote 4. Your adversary has said you can do it. So, I mean, to the extent there was a concern at one point about whether you would be left with no opportunity to ever do it, that's been removed, hasn't it? Certainly, there would be a second chance to do that. I'm not contesting that. All I can do is take on what the district court ruled here, which is this case is not ripe as a matter of federal law. And we plainly think that it is. The fact that the court left open a back door that we can again challenge in the future doesn't make the first decision correct. And that's what the, you know, I get it. Why is it ripe now as opposed to a year from now? Because the contract says what it says. We have to know what our rights are now. And it depends on what that language is. The language isn't going to change. It's like anything else. You can gather, you can gain that knowledge a year from now when you re-file. Well, let me give you an example. If you thought the other side breached the agreement, you have to go look at the contract and say, all right, well, can I terminate it now? Or is there a cure provision? Do I have to give them time? You're not claiming the other side breached? No, no. This is just an example. It's just saying provisions, even though you haven't actually used them yet, they're in the agreement. And the only way you can determine your rights is to look at the agreement and say, what does it say? In this circumstance, what are my rights? And that's what we're saying is this provision is there. Is it a discretionary matter whether to consider it now? I don't think so. Certainly there's some discretion in the Declaratory Judgment Act under this. For the reasons that the district court gave, I don't believe it is discretionary. You know, we are, there's a form of selection clause that says we have to file in New York. I mean, this is our only way of getting this heard is come to New York, ask the court for this declaration. And the court declined to do it on grounds that we think are not correct. And that's what we're challenging. Okay. I think we have your argument. Is there any further questions? We will take the case under advisement. Thank you both very much for the argument. Thank you. And thank you all. And with that, we will stand adjourned. Court stands adjourned. Court adjourned.